**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x<br><br>**JESSICA TOWNS, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ULTRACOR, INC.,**<br><br>**Defendant.**<br><br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | Case No.: ___________<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff **JESSICA TOWNS**, ("Plaintiff" or "Ms. Towns,") individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant ULTRACOR, INC. ("Ultracor" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its e-commerce Website, www.ultracor.com, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. **Jessica Towns** is a resident of Bronx County and is permanently disabled due to legal blindness. Ms. Towns suffers from severe legal blindness, a permanent and incurable ocular condition recognized by the New York State Office of Children and Family Services as meeting the criteria for legal blindness under both federal and New York State standards. As documented and confirmed by Dr. Michelle Bangiyev, O.D., of Pelham Gardens Eye Associates, on January 4, 2025, Ms. Towns's visual acuity in her better eye, with best correction, does not exceed 20/200, satisfying the definition of legal blindness under applicable federal and state criteria. Dr. Bangiyev further confirms that Ms. Towns's condition is permanent, incurable, and significantly impairs her ability to visually interpret printed or digital information without assistive technology. Exhibit A

2. Ms. Towns is a proficient user of screen-reading technology and keyboard navigation, which she relies on to access digital environments independently. Because she cannot visually perceive website content without accessible coding, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and screen-reader-compatible navigation in order to browse, evaluate, and purchase goods online. For blind consumers such as Ms. Towns, screen-reading software is not optional; it is the only means by which they can independently access the internet.

3. According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web.

4. The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

5. Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of

being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

6. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

7. Plaintiff brings this civil action against Defendant Ultracor, Inc. for its failure to design, construct, maintain, and operate its highly interactive website, www.ultracor.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website — and therefore to the goods and services offered therein — constitutes a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*.

8. On March 18, 2026, April 22, 2026, and May 28, 2026, Plaintiff attempted to access Defendant's website using screen-reader technology in order to research and purchase luxury activewear offered for sale. Plaintiff specifically sought to purchase (1) a **Nero Ultracolor Ultra High Legging in Nero Neutral** for herself — a signature high-waisted performance legging featuring Ultracor's proprietary Nero Ultracolor ombre colorway, designed with patented Compression-360™ technology and available on the Nero Ultracolors collection page of

www.ultracor.com, priced at $325; and (2) a **Lux Essential Sprinter Ultra High Legging** as a gift for her daughter — a luxury made-to-order performance legging from Ultracor's premium Lux Essentials line, also priced at $325. Plaintiff's shopping objectives were concrete, personal, and time-sensitive. She intended to review the product descriptions, color options, available sizes, pricing, and purchase options for each item before completing a transaction.

9. Despite multiple attempts, Plaintiff was unable to independently complete her objectives due to persistent access barriers. SortSite audits of the exact product and collection pages Plaintiff attempted to access revealed, among other things, **1,671 pages** across the website affected by a broken *aria-controls* attribute referencing DOM elements that do not exist — a critical WCAG 2.1 Level A violation (4.1.2) that renders interactive controls such as size selectors, color swatches, and expandable product description sections entirely inaccessible under NVDA — as well as pervasive *aria-hidden=true* elements concealing focusable content from screen readers on 7 pages, HTML form controls with no accessible name on 1,671 pages, and empty headings on 89 pages. These barriers interfered with screen-reader navigation and prevented Plaintiff from obtaining the same product information available to sighted users.

10. The accessibility barriers were pervasive across the pages Plaintiff attempted to use. The SortSite accessibility audit of www.ultracor.com — conducted on June 13, 2026 across 5,059 pages and files — revealed 1,839 pages with accessibility problems, reflecting a site-wide quality score that is 37% worse than average. The Nero Ultracolors collection page and the Lux Essentials product pages on which Plaintiff's desired items are listed were among the 1,671 pages affected by the broken *aria-controls* attribute defect, which caused NVDA to fail silently when Plaintiff attempted to operate color selectors, size selectors, and expandable product sections. The 7 pages affected by *aria-hidden=true* concealing focusable content caused NVDA to produce

silence rather than announcing interactive elements. The 89 pages with empty headings — including several product pages in the active inventory — prevented Plaintiff from using heading navigation to orient herself within the page structure. All of these errors were identified by SortSite as WCAG 2.1 Level A violations. Exhibit B

11. Defendant operates a luxury direct-to-consumer e-commerce platform through which consumers can browse made-to-order performance activewear, review product-specific information including color, material, and size options, and purchase items directly online. Plaintiff specifically sought out Defendant because of its unique positioning as a Los Angeles-based luxury activewear brand offering handcrafted, made-to-order performance garments featuring patented Compression-360™ technology at price points substantially lower than comparable luxury sportswear brands, and because Defendant's sustainable, zero-inventory model ensured that each garment was produced to the customer's specification. As a legally blind consumer, Plaintiff relies on accessible digital interfaces and descriptive labeling to make informed purchasing decisions. Defendant's failure to provide an accessible website denied her equal access to the goods and services it provides to non-disabled customers.

12. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.ultracor.com becomes and remains accessible to blind and visually impaired users. Plaintiff remains genuinely interested in purchasing the products offered by Defendant and intends to return to the website as soon as it is remediated so that she may independently browse and obtain information about products for herself and her family. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

## JURISDICTION & VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*.

14. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

15. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. *See Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); *see also Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

16. Defendant is subject to personal jurisdiction in this District because Ultracor, Inc. is a California corporation that purposefully directs business activities toward New York consumers through its highly interactive e-commerce website, www.ultracor.com, which allows users to browse luxury activewear collections, review product information, select color and size options, create accounts, and complete purchases. Defendant ships its made-to-order products directly to New York residents and derives substantial revenue from sales to consumers in this State. *See Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

17. The United States Department of Justice has repeatedly confirmed that the ADA

applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

18. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

19. Plaintiff Jessica Towns is, and at all relevant times was, a resident of Bronx County, New York. Ms. Towns is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 *et seq.*, and the protections afforded under New York State and New York City law. As confirmed by her treating optometrist, Ms. Towns suffers from legal blindness as reflected by visual acuity not exceeding 20/200 in her better eye with best correction, a permanent condition that severely restricts her visual acuity and visual fields and requires the use of screen-reading software to access digital content independently.

20. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Towns depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

21. Upon information and belief, Defendant Ultracor, Inc. is a corporation organized under the laws of the State of California, with its principal place of business at 13020 Yukon Ave, Hawthorne, California 90250. Defendant owns, operates, and controls the commercial website www.ultracor.com, through which it markets, displays, and sells luxury made-to-order performance activewear to consumers throughout the United States, including residents of New

York.

22. Defendant transacts substantial business within the State of New York and within this District by offering its e-commerce goods and services to New York consumers, shipping products directly to New York addresses, and deriving significant revenue from New York-based transactions. Defendant's website is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7), because it is a service and sales platform offered to the general public.

23. At all relevant times, Defendant was responsible for designing, constructing, maintaining, and operating its website in a manner that complies with federal, state, and local disability-rights laws. Defendant failed to do so, resulting in the denial of full and equal access to Plaintiff and other blind and visually impaired consumers.

24. Ms. Towns is a proficient user of screen-reading technology and keyboard navigation, which she relies on to access digital environments independently. Because she is unable to access visual website content without accessible coding, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and screen-reader-compatible navigation in order to browse, evaluate, and purchase goods online.

25. Plaintiff brings this civil action against Defendant ULTRACOR, INC. for its failure to design, construct, maintain, and operate its highly interactive website, www.ultracor.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website — and therefore to the goods and services offered therein — constitutes a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*.

## STATEMENT OF FACTS

26. On March 18, 2026, April 22, 2026, and May 28, 2026, Plaintiff attempted to access Defendant's website using screen-reader technology in order to research and purchase luxury

performance activewear offered for sale on the site. Plaintiff specifically sought to purchase (1) a **Nero Ultracolor Ultra High Legging in Nero Neutral**, priced at $325, featured on the Nero Ultracolors collection page of www.ultracor.com; and (2) a **Lux Essential Sprinter Ultra High Legging**, also priced at $325, from the Lux Essentials collection. Plaintiff's shopping objectives were concrete, personal, and time-sensitive. She intended to review the product descriptions, images, color and size options, pricing, and related purchase options for each item before completing a transaction.

27. Despite multiple attempts, Plaintiff was unable to independently complete her objectives due to persistent access barriers. The SortSite accessibility audits of the exact product and collection pages Plaintiff sought to access revealed, among other things, broken ARIA control references, form controls with no accessible names, elements concealed behind *aria-hidden* attributes that nonetheless remained focusable, empty headings, improperly structured list elements, and broken links — all of which interfered with screen-reader navigation and prevented Plaintiff from obtaining the same product information available to sighted users.

28. The accessibility barriers were pervasive across the pages Plaintiff attempted to use. The **Nero Ultracolors collection page** — from which Plaintiff sought the Nero Ultracolor Ultra High Legging in Nero Neutral — was among the 1,671 product pages on www.ultracor.com confirmed by SortSite to carry a broken *aria-controls* attribute (WCAG 2.1 Level A, 4.1.2) in which the attribute lists IDs of elements that are not present in the DOM. This defect rendered the color selector, size selector, and all expandable product sections on that page inaccessible under NVDA. The **Lux Essentials product pages** were similarly affected. In both instances, when Plaintiff attempted to operate these interactive controls using NVDA, the screen reader produced no output — complete silence — because the ARIA control references pointed to non-existent

DOM elements, preventing NVDA from locating or reading the controlled content.

29. Defendant operates a luxury direct-to-consumer e-commerce platform through which consumers can browse made-to-order performance activewear, review product-specific information, and purchase items directly online. Plaintiff specifically sought out Defendant because of its singular market positioning as a Los Angeles-based luxury activewear brand offering handcrafted, made-to-order performance garments utilizing its proprietary patented Compression-360™ technology — a technology that simultaneously sculpts, supports, and is claimed by Defendant to enhance physical performance — which is not replicable in construction or concept from any other activewear retailer. The specific designs Plaintiff sought — the Nero Ultracolor Ultra High Legging in its signature Nero Neutral ombre colorway and the Lux Essential Sprinter Ultra High Legging — are made to order exclusively through Defendant's website and are not available from Lululemon, Alo Yoga, Vuori, or any other activewear brand at any comparable price point. As a legally blind consumer, Plaintiff relies on accessible digital interfaces and descriptive labeling to make informed purchasing decisions. Defendant's failure to provide an accessible website denied her equal access to the goods and services it provides to non-disabled customers.

30. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.ultracor.com becomes and remains accessible to blind and visually impaired users. Plaintiff remains genuinely interested in purchasing the products offered by Defendant and intends to return to the website as soon as it is remediated so that she may independently browse and obtain information about products for herself and her family. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

31. Plaintiff Jessica Towns is a legally blind consumer who relies exclusively on screen-reading software and keyboard navigation to access digital content. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Towns depends on businesses to design and maintain their websites in a manner that is compatible with screen-reader technology. When websites are not coded to provide meaningful alternative text, proper ARIA labeling, accessible navigation, and programmatically determinable structure, blind users are denied the ability to browse, evaluate, and purchase goods independently.

32. Defendant Ultracor, Inc. owns and operates the commercial website www.ultracor.com, through which it markets, displays, and sells luxury performance activewear to consumers nationwide. Ultracor's brand identity is built on its tagline "Beauty Through Performance™" and its direct-to-consumer model offering handcrafted, made-to-order activewear featuring patented Compression-360™ technology. Defendant brands itself as a sustainability leader, utilizing a waterless, chemical-free, zero-inventory production model that reduces its carbon footprint by 95%. Because Ultracor sells its activewear exclusively online and directly to consumers through www.ultracor.com and has no physical retail stores open to the public, its website is the **only** means by which consumers — including blind consumers such as Plaintiff — can access, evaluate, and purchase its products. For blind consumers who wish to purchase a specific item from Defendant, there is no in-store alternative and no third-party retailer channel; the e-commerce website is the singular point of access.

33. On March 18, 2026, April 22, 2026, and May 28, 2026, Plaintiff attempted to access Defendant's website using NVDA screen-reading software in order to research and purchase two specific items: (1) a **Nero Ultracolor Ultra High Legging in Nero Neutral** ($325), Defendant's signature performance legging featuring a deep charcoal-to-neutral ombre colorway rendered in

Ultracor's proprietary Nero Ultracolor digital-print fabric, incorporating patented Compression-360™ technology and engineered in a high-rise, full-length silhouette exclusively available through Defendant's website, which Plaintiff chose for her personal athletic and daily use because of its distinctive proprietary colorway, its patented compression technology, and its unmatched combination of luxury aesthetics with functional performance that she could not find from any other activewear brand at this quality level; and (2) a **Lux Essential Sprinter Ultra High Legging** ($325), a luxury made-to-order high-rise performance legging from Defendant's premium Lux Essentials collection, which Plaintiff intended as a birthday gift for her daughter who had specifically expressed interest in Ultracor's Lux Essentials line for its refined aesthetic and technical fabrication. Plaintiff selected these items from Defendant's website — rather than from Lululemon, Alo Yoga, Vuori, or other online activewear retailers — because Defendant's made-to-order model offered proprietary patented compression technology and luxury-grade technical fabrication at prices she could not find elsewhere, and because Defendant's sustainable, zero-inventory production model — manufacturing each garment fresh in Los Angeles to the customer's specification — ensured a quality and exclusivity not available from mass-market activewear retailers. These items were not available to her in comparable construction, technology, and pricing from any other retailer.

34. Plaintiff's shopping objectives were concrete, personal, and time-sensitive. She intended to review the product descriptions, product images, color options, available sizes, pricing, and related purchase options for each item before completing a transaction. However, despite multiple attempts, Plaintiff was unable to independently complete her objectives due to pervasive and persistent access barriers on each of the pages she attempted to use.

35. The SortSite accessibility evaluation of the Nero Ultracolors collection page of

www.ultracor.com — the page on which the Nero Ultracolor Ultra High Legging in Nero Neutral is listed — confirmed that this page was among the 1,671 pages affected by the critical WCAG 2.1 Level A (4.1.2) *aria-controls* violation in which the attribute lists IDs of elements not present in the DOM. The interactive controls on the Nero Ultracolors collection page — including the color swatch selector for Nero Neutral, Nero Aqua, Nero Slate, and Nero Violet; the size selection interface; and the expandable product description and details sections — all relied upon *aria-controls* attributes referencing elements that do not exist in the rendered HTML. When Plaintiff attempted to navigate these controls using NVDA, the screen reader announced the control labels but was unable to locate, activate, or read the content the controls were supposed to reveal, because those content elements were not present in the DOM. NVDA produced complete silence or failed to transition to any controlled content, making it impossible for Plaintiff to determine which product variant she was selecting, what sizes were available in her preferred colorway, or what the product specifications were before making a purchase decision.

36. The SortSite accessibility evaluation of the **Lux Essentials collection and the Lux Essential Sprinter Ultra High Legging product page** of www.ultracor.com similarly confirmed that these pages were among the 1,671 pages affected by the broken *aria-controls* attribute defect. The Lux Essential Sprinter Ultra High Legging product page — the specific page on which Plaintiff's intended gift item is listed — carried multiple critical WCAG 2.1 Level A violations: (a) the *aria-controls* attribute on all interactive elements (color selector, size selector, quantity controls, and expandable "Description," "Details," and "Size Guide" sections) listed IDs of DOM elements that do not exist, rendering these controls completely nonfunctional under NVDA; (b) HTML form controls on the page, including the size selector buttons (XXS, XS, S, M, L, XL) and the Add to Bag button, had no accessible names (WCAG 2.1 Level A, F68/4.1.2), causing NVDA

to announce only "button" with no context whatsoever; and (c) the page contained empty headings (WCAG 2.1 Level A, 1.3.1) that caused heading-based navigation under NVDA to produce blank or silent announcements, depriving Plaintiff of the structural landmarks necessary to orient herself within the page. These barriers prevented Plaintiff from accessing essential product information about the Lux Essential Sprinter Ultra High Legging and from completing her intended purchase.

37. Across both pages, Plaintiff encountered additional barriers including *aria-hidden=true* elements on seven pages throughout the site that concealed focusable content from screen readers, causing NVDA to produce silence when navigating over interactive elements hidden behind these attributes; improperly structured *<li>* elements on 1,671 pages that appeared visually as bullet lists to sighted users but were not announced as list items by NVDA; and 262 pages carrying broken links returning HTTP errors, including 12 pages with HTTP 404 errors. These barriers collectively prevented Plaintiff from navigating the pages, understanding the structure of the content, accessing product details, and completing a purchase. The barriers were not isolated or technical anomalies; they were systemic and affected every page Plaintiff attempted to use.

38. Defendant’s website carries a third-party accessibility overlay widget — a floating accessibility button visible in the bottom-right corner of every page — rather than conformance with WCAG 2.1 through proper accessible coding practices. Defendant maintains **no accessibility statement** on its website, has published no WCAG conformance claim, and has made no public commitment to any accessibility standard. Third-party overlay widgets do not remediate underlying coding deficiencies identified by SortSite, and their application does not bring Defendant’s website into WCAG 2.1 compliance. As a result of these barriers, Plaintiff was denied the full and equal enjoyment of Defendant’s website and was unable to purchase the items she

specifically sought.

39. Plaintiff remains highly interested in purchasing the Nero Ultracolor Ultra High Legging in Nero Neutral and the Lux Essential Sprinter Ultra High Legging from Defendant and intends to return to the website as soon as it is made accessible. However, the persistent barriers she encountered deter her from attempting to use the website again until it is remediated. Plaintiff's injury is ongoing because Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility. Pursuant to *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022), Plaintiff's intent to return is not speculative — it is grounded in her specific, documented desire to purchase identified products that remain available on Defendant's website, and her established pattern of attempting to access www.ultracor.com on multiple occasions.

40. Plaintiff remains highly interested in purchasing luxury activewear from Defendant and intends to return to the website as soon as it is made accessible. However, the persistent barriers she encountered deter her from attempting to use the website again until it is remediated. Plaintiff's injury is ongoing because Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility.

41. Defendant's failure to design, construct, maintain, and operate its website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## NATURE OF ACTION

42. The Internet has become an essential tool for daily life, serving as a primary means of shopping, banking, learning, communicating, and accessing goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in modern society

on equal terms. The inability to access digital content independently results in exclusion from the digital marketplace and denies blind consumers the independence and autonomy that sighted users take for granted.

43. Blind and visually impaired individuals access websites using screen-reading software, which converts digital content into synthesized speech or refreshable Braille. This technology is the only method by which blind users can independently navigate the internet. For screen-reading software to function, website content must be capable of being rendered into text. When websites lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references, blind users cannot navigate, understand, or interact with the website.

44. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

45. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. The ADA's protections extend to digital spaces. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

46. Defendant Ultracor, Inc. owns and operates the commercial website www.ultracor.com, through which it markets, displays, and sells luxury made-to-order performance activewear to consumers nationwide. Defendant's brand is built on direct-to-consumer access to its exclusive activewear designs — including the Nero Ultracolors collection and the Lux Essentials line — featuring patented Compression-360™ technology. Because Defendant sells exclusively through its e-commerce website and has no physical retail stores open to the public, the website is the **only** means by which consumers can access, evaluate, and purchase its products. For blind consumers such as Plaintiff, the inability to access Defendant's website results in complete exclusion from Defendant's goods and services.

47. Plaintiff attempted to access Defendant's website on multiple occasions to research and purchase two specific items: a Nero Ultracolor Ultra High Legging in Nero Neutral and a Lux Essential Sprinter Ultra High Legging. These items were uniquely available on Defendant's website in the specific construction, technical fabrication, and at the specific prices offered. Plaintiff's shopping objectives were concrete, personal, and time-sensitive. However, due to pervasive accessibility barriers on each of the pages she attempted to use, Plaintiff was unable to independently review the product descriptions, images, color options, pricing, or purchase options necessary to complete a transaction.

48. The SortSite accessibility evaluations of the pages Plaintiff attempted to access revealed significant and widespread accessibility barriers, including broken *aria-controls* attributes on 1,671 pages (including the Nero Ultracolors collection and the Lux Essentials product pages), *aria-hidden=true* concealing focusable content on 7 pages, HTML form controls with no accessible name on 1,671 pages, and empty headings on 89 pages. These barriers prevented Plaintiff from accessing essential product information and from completing her intended

purchases.

49. Defendant's failure to design, construct, maintain, and operate its website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

50. Plaintiff brings this action to enforce her civil rights and to secure injunctive relief requiring Defendant to adopt and implement policies, practices, and procedures that will ensure that its website becomes and remains accessible to blind and visually impaired individuals. Plaintiff remains highly interested in purchasing luxury activewear from Defendant and intends to return to the website as soon as it is made accessible. Without remediation, Plaintiff and other blind consumers will continue to be excluded from equal participation in Defendant's online marketplace.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of all legally blind individuals in the United States who have attempted to access Defendant's website and, as a result of Defendant's failure to design and maintain the website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

52. Plaintiff also seeks certification of a New York subclass consisting of all legally blind individuals residing in the State of New York who have attempted to access Defendant's website and were denied equal access to the goods, services, and information offered thereon.

53. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff but is believed to be in the thousands, given the size of the blind and visually impaired population and the widespread use of Defendant's website.

54. Common questions of law and fact exist among the Class and Subclass, including but not limited to: (a) whether Defendant's website is a "public accommodation" under Title III of the ADA; (b) whether Defendant's website denies blind and visually impaired individuals full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations; (c) whether Defendant's failure to comply with WCAG 2.1 constitutes a denial of equal access; (d) whether Defendant has failed to adopt policies and practices reasonably calculated to ensure ongoing accessibility; and (e) whether injunctive relief is warranted to require Defendant to make its website accessible.

55. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, attempted to access Defendant's website, encountered access barriers, and was denied equal access to Defendant's goods and services.

56. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in disability rights litigation, class actions, and website accessibility cases. Plaintiff has no interests antagonistic to the Class.

57. Defendant has acted or refused to act on grounds generally applicable to the Class, making injunctive relief appropriate with respect to the Class as a whole under Rule 23(b)(2).

58. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive and declaratory relief appropriate with respect to the Class as a whole.

59. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

60. Plaintiff, JESSICA TOWNS, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

62. Defendant's Website, www.ultracor.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

63. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

64. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally

> alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

65. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.ultracor.com, has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

66. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
### (New York State Human Rights Law)
### ("NYSHRL")

67. Plaintiff, JESSICA TOWNS, on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

68. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

69. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

70. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.ultracor.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

71. Plaintiff has visited the Website, www.ultracor.com, on a number of occasions and has encountered barriers to her access that exist.

72. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

73. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

74. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is

inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

75. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

76. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

77. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law §

296(2) and the discrimination continues to date.

78. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

79. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*.

80. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

81. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

82. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

## THIRD CAUSE OF ACTION
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

83. Plaintiff, JESSICA TOWNS, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

84. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

85. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons.

No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

86. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

87. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

88. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.ultracor.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

89. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

90. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

91. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside."

*Id.*

92. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*.

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

93. Plaintiff, **JESSICA TOWNS.** on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

94. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

95. Defendant is subject to NYCHRL because it owns and operates the Website, www.ultracor.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

96. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therein completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

97. Defendant is required to "make reasonable accommodation to the needs of persons

with disabilities … any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

98. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

99. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

100. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

101. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes

the right to injunctive relief to remedy the discrimination.

102. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

103. Plaintiff is also entitled to reasonable attorneys' fees and costs.

104. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

105. Plaintiff, **JESSICA TOWNS**, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

106. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

107. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 *et seq.*;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.ultracor.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;
- Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under the New York City Human Rights Law, the New York State Human Rights Law, and the New York State Civil Rights Law;
- Pre-judgment and post-judgment interest;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
June 29, 2026

Respectfully submitted,
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq.
JOSEPH & NORINSBERG, LLC
825 Third Avenue, Suite 2100
New York, NY 10022
Tel: (212) 227-5700
rschonfeld@employeejustice.com